Kenneth J. MARTIN and Bill
Martin, Plaintiffs,

v.

Mark LOCICCERO, Bison Baseball, Inc.
Stadium Services, Inc., The City of Buffalo, New York, and John Doe ("Buffalo Police Officers"), Defendants.

BISON BASEBALL, INC. and Stadium
Services, Inc., Third Party
Plaintiffs,

v.

CHASE INVESTIGATIONS, INC.,
Third Party Defendant.

No. 93–CV–419H.

United States District Court,
W.D. New York.

June 16, 1995.

Gerald T. Walsh, Buffalo, NY, for plaintiffs.

Gerard A. Strauss, Andrew Feldman, Michael B. Risman, Laurence K. Rubin, Buffalo, for defendants.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct all further proceedings in this case, including trial and entry of judgment, pursuant to 28 U.S.C. § 636(c). Defendants City of Buffalo (the "City") and Bison Baseball, Inc. and Stadium Services, Inc. ("BBI/SSI") have moved for summary judgment (Items 17 and 34). Plaintiff has moved to amend the complaint to add third-party defendant Chase Investigations, Inc.

("Chase") as a direct defendant (Item 31). For the reasons that follow, the defendants' summary judgment motions are denied, and the plaintiff's motion is granted.

## BACKGROUND

The complaint in this action was filed on May 14, 1993. It alleges that on the evening of May 14, 1992, plaintiffs were patrons at Pettibone's Grille, located at the ballpark formerly known as Pilot Field in downtown Buffalo, New York. At approximately 9:30 p.m., defendant LoCiccero and another unnamed individual (later identified as Brenda Callahan), "as part of their regular and official employment" as Buffalo Police officers, and "acting within the scope of their employment" as security officers at the ballpark (Item 1, ¶ 18), responded to a call for assistance made by a Pettibone's bartender. Plaintiffs allege that the officers then physically and verbally assaulted them at Pettibone's, in a closed security room at the ballpark, and in the elevator and cell block at Buffalo Police headquarters. Plaintiffs allege that this conduct violated their constitutional rights under the fourth, fifth, sixth, eighth and fourteenth amendments, and supports this action for damages under 42 U.S.C. §§ 1983, 1985 and 1988 as well as common law tort.

BBI/SSI filed a third-party action against Chase, the company that employed LoCiccero and other off-duty police officers as security officers at the downtown ballpark (Item 3).

Upon completion of discovery, the City moved for summary judgment on the ground that, under state law, it cannot be held vicariously liable for the off-duty conduct of LoCiccero or any other Buffalo police officer involved in the incident. After briefing and argument of this motion, and after substitution of counsel, BBI/SSI moved for summary judgment to dismiss it from the case. Plaintiff subsequently moved to add Chase as a direct defendant. Each of these motions is discussed in turn below.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, supra, 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci*, supra (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona*, 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. AnnTaylor, Inc.*, supra, 933 F.2d at 167.

### A. The City's Motion for Summary Judgment.

#### 1. § 1983.

In order to maintain a § 1983 action, two essential elements must be present:

(1) the conduct complained of must have been committed by a person acting under color of state law, and (2) the conduct complained of must have deprived a person of the rights, privileges or immunities secured by the federal constitution or laws. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). A person is acting under color of state law when his or her actions were "committed in the performance of any actual or pretended duty...." *Bonsignore v. City of New York,* 683 F.2d 635, 639 (2d Cir.1982). "Acts of police officers in the ambit of their personal, private pursuits" do not give rise to § 1983 liability. *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975) (citing *Monroe v. Pape,* 365 U.S. 167, 185, 81 S.Ct. 473, 483, 5 L.Ed.2d 492 (1961)), *cert. dismissed,* 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976).

■ However, in determining whether a police officer was acting under color of state law, "[m]ore is required than a simple determination as to whether an officer was on or off duty when the challenged incident occurred." *Pitchell v. Callan,* 13 F.3d 545, 548 (2d Cir.1994); *see also United States v. Tarpley,* 945 F.2d 806, 809 (5th Cir.1991), *cert. denied,* 504 U.S. 917, 112 S.Ct. 1960, 118 L.Ed.2d 562 (1992). Nor is "the lack of outward indicia—such as being on duty, wearing a uniform, or driving a patrol car ..." determinative. *Revene v. Charles County Commissioners,* 882 F.2d 870, 872 (4th Cir.1989). Rather, it is the nature of the officer's act that controls. *Id.; Monroe v. Pape, supra,* 365 U.S. at 184–87, 81 S.Ct. at 482–84. Thus, § 1983 liability may be found where the police officer, even though off-duty, nonetheless invokes the real or apparent power of the police department or performs duties prescribed generally for police officers. *Pitchell v. Callan, supra.*

## 2. Vicarious Liability Under § 50–j of the General Municipal Law.

The City contends that, as a matter of law, it cannot be held liable for LoCiccero's acts at Pettibone's on May 14, 1992 because he was not "acting in the discharge of his duties" within the meaning of N.Y. General Municipal Law § 50–j. Under § 50–j, a municipality is required to assume the liability for the negligence of any of its police officers, "provided such police officer, at the time of the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment." N.Y.Gen.Mun. Law § 50–j(1). Further, under § 50–j(2):

> For purposes of this section, a police officer of any such municipality ... when within the geographic limits of his jurisdiction, *although excused from official duty at the time,* shall be deemed to be acting in the discharge of duty when engaged in the immediate and actual performance of a public duty imposed by law and such public duty performed was for the benefit of all the citizens of the community and the municipality ... derived no special benefit in its corporate capacity.

N.Y.Gen.Mun. Law § 50–j(2) (emphasis added).

State cases interpreting the scope of a municipality's vicarious liability under this statute have held that the question whether an off-duty police officer was acting in the performance of his or her duties and within the scope of his or her employment is to be determined by examining the circumstances under which the act complained of was committed. *See, e.g., Joseph v. City of Buffalo,* 83 N.Y.2d 141, 608 N.Y.S.2d 396, 629 N.E.2d 1354 (1994) (off-duty police officer not acting in performance of duties when he placed loaded service revolver under son's mattress); *Clancy v. County of Nassau,* 142 A.D.2d 626, 530 N.Y.S.2d 587 (2nd Dept.1988) (off-duty policeman involved in shooting during altercation in shopping center parking lot was acting in the course of employment); *Garcia v. City of New York,* 104 A.D.2d 438, 478 N.Y.S.2d 957 (2nd Dept.1984) (off-duty police officer not "arguably engaged in police business" when he deliberately fired service revolver at plaintiff), *aff'd,* 65 N.Y.2d 805, 493 N.Y.S.2d 127, 482 N.E.2d 923 (1985). This approach is similar to the "nature of the act" analysis used in the federal cases cited above to determine whether an officer acted under color of state law for § 1983 purposes.

■ Upon examination of the record before the court on this motion, in light of the holdings of these state and federal cases, I find that there are material factual issues regarding whether defendant LoCiccero was acting in the performance of his duties and within the scope of his employment as a police officer when he responded to the call for assistance at Pettibone's on May 14, 1992. He testified at his deposition that he was working for Chase as a security guard at the time of the incident. He was wearing a light blue uniform shirt, navy blue uniform pants, and black shoes. There was no badge or other insignia on the clothing to indicate who he was working for. He had a handgun, a pair of handcuffs and a walkie-talkie. When he arrived at Pettibone's with four other uniformed security officers in response to the call for assistance, the bar was crowded. The bartender identified approximately five individuals who were creating a disturbance in the bar area. The bartender had asked them to leave, but they refused (Item 21, Ex. 1, pp. 16–23).

LoCiccero testified that after speaking to the bartender, he approached the individuals. He identified himself as an off-duty police officer working security. He asked them if they would leave the premises. He testified that one of the plaintiffs refused and began to swear loudly. The plaintiff pushed LoCiccero twice. A struggle ensued, during which LoCiccero and another security officer attempted to handcuff the plaintiff while rolling around on the floor. The other plaintiff tried to grab LoCiccero around the legs. After about five minutes, the officers were eventually able to handcuff both of the plaintiffs and transport them by elevator down to the stadium security office (id., pp. 23–36). LoCiccero testified that at some point during the officers' attempts to handcuff the plaintiffs, he informed them that they were being placed under arrest and that charges would be brought against them (id., p. 58).

The City has submitted a copy of its police department's "Rules and Regulations" to support its argument that LoCiccero was not acting within the scope of his duties as a police officer when he arrested plaintiffs. According to the City, the rules were amended in 1988 to eliminate the requirement that off-duty officers make arrests upon observing violations of the law. Nevertheless, § 50–j(2) requires the City to assume liability for the conduct of off-duty police officers performing police duties.

I find that there are factual issues as to whether defendant LoCiccero was "at least arguably engaged in police business" when he handcuffed the plaintiffs, advised them they were under arrest and informed them that charges would be brought against them. See Garcia v. City of New York, supra, 104 A.D.2d at 439, 478 N.Y.S.2d at 958. Accordingly, the City's motion for summary judgment must be denied.

## B. BBI/SSI Motion for Summary Judgement.

BBI/SSI has also moved for summary judgment dismissing the complaint (Item 34). BBI/SSI argues that it cannot be held liable for the conduct of the employees of Chase, its independent contractor. BBI/SSI also argues that its contract with Chase obligates Chase to indemnify BBI/SSI for any losses suffered as a result of this lawsuit, and to reimburse it for defense costs. In response, plaintiffs challenge BBI/SSI's characterization of Chase as an independent contractor. Plaintiffs also argue that the duty of BBI/SSI as proprietor of the downtown ballpark is a nondelegable one, and that any attempt to contract away its liability is unenforceable under the common law and N.Y. General Obligations Law § 5–326.[1]

1. N.Y. General Obligations Law § 5–326 provides:

Every covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be

■ BBI/SSI's motion must be denied, for several reasons. For one thing, BBI/SSI did not submit a memorandum of law with its notice of motion and Local Rule 56 statement. Local Rule 7.1(e) instructs as follows:

> Absent leave of court or otherwise specified in this rule, upon any motion filed pursuant to Federal Rules of Civil Procedure 12, 56 or 65(a), the moving party shall file and serve with the motion papers a memorandum of law and an affidavit in support of the motion. . . . Failure to comply with this subdivision may constitute grounds for resolving the motion against the non-complying party.

In light of the complexity of the common law and statutory issues raised by this motion, and in light of the fact that the motion was made on the eve of trial only after substitution of counsel, compliance with Local Rule 7.1(e) should be enforced in this case.

■ In addition, plaintiffs have raised factual issues with regard to the personal involvement of BBI/SSI employees Joseph Petronella (Director of Security for BBI), Michael J. Billoni, (Vice President and General Manager of BBI) and David Voyer (general manager of Pettibone's Grille and an employee of SSI) in the alleged constitutional deprivations. Therefore, even if BBI/SSI's motion papers were deemed sufficient to establish the absence of any genuine issues of material fact as to the pertinent contractual obligations, plaintiff has come forward with enough evidence to preclude dismissal of the case against BBI/SSI.

■ Finally, resolution of the issue of Chase's duty to defend and indemnify should await the determination of liability, if any, by the jury. *Bermudez v. New York City Housing Authority,* 199 A.D.2d 356, 357, 605 N.Y.S.2d 352, 354 (2nd Dept.1993).

Accordingly, BBI/SSI's motion for summary judgment is denied.

## II. Plaintiffs' Motion to Add Chase as a Direct Defendant.

Plaintiffs move under Fed.R.Civ.P. 14(a) for leave to amend the complaint to add third-party defendant Chase as a direct defendant in the case. Chase opposes the motion on the grounds that, as a private company, it cannot be held liable under § 1983 and, in any event, the statutes of limitations have expired on all of the claims asserted against it.

Rule 14(a) governs federal court third-party practice. It allows a defending party in a lawsuit to join a person not a party to the action who is or may be liable to the original defendant for all or part of the plaintiff's claim. The rule then provides that once a party is named as a third-party defendant, it may assert any defenses or claims it may have against the original plaintiff, and the plaintiff "may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. . . ." Fed.R.Civ.P. 14(a); *see Straub v. Desa Industries, Inc.,* 88 F.R.D. 6, 8 (M.D.Pa.1980).

Rule 14 does not delineate the procedure to be followed by a plaintiff who seeks to raise claims directly against a party brought into the case as a third-party defendant. However, the procedure usually adopted by the parties, and followed by the courts, is application for leave to amend the original complaint pursuant to Rule 15. *See, e.g., Wasik v. Borg,* 423 F.2d 44 (2d Cir.1970); *Straub v. Desa, supra.* Rule 15 requires the court to "freely" grant leave to amend absent undue prejudice to the party opposing the amendment, undue delay on the part of the party seeking the amendment, or bad faith. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1967); *Oliner v. McBride's Industries, Inc.,* 106 F.R.D 9, 12 (S.D.N.Y.1985). Leave to amend should not be granted, however, if it appears that the movant can prove no set of facts in support of the proposed claims that would entitle him or her to relief. *Bank of New York v. Sasson,* 786 F.Supp. 349, 352 (S.D.N.Y.1992).

■ Under Rule 15, where a party seeks to amend its pleading to assert a claim that would otherwise be time-barred by the applicable statute of limitations, the claim will be

void as against public policy and wholly unenforceable.

saved by the "relation back" doctrine if it arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading...." Fed. R.Civ.P. 15(c)(2). In determining whether a claim relates back, courts look to the "operational facts" set forth or attempted to be set forth in the party's original pleading to determine whether the opposing party was put on notice of the claim later sought to be added. *Hooper v. Sachs,* 618 F.Supp. 963, 977 (D.Md.1985), *aff'd,* 823 F.2d 547 (4th Cir.), *cert. denied,* 484 U.S. 954, 108 S.Ct. 347, 98 L.Ed.2d 373 (1987); *Zagurski v. American Tobacco Co.,* 44 F.R.D. 440, 442 (D.Conn.1967).

> [T]he relation back doctrine is based upon the principle that one who has been given notice of litigation concerning a given transaction or occurrence has been provided with all the protection that statutes of limitation are designed to afford. Thus, if the litigant has been advised at the outset of the general facts from which the belatedly asserted claim arises, the amendment will relate back even though the statute of limitations may have run in the interim.

*Tri–Ex Enterprises, Inc. v. Morgan Guaranty Trust Co.,* 586 F.Supp. 930, 932 (S.D.N.Y. 1984).

In addition, when the amendment "changes the party or the naming of the party against whom a claim is asserted ...," as it seeks to do in this case in order to properly identify the employer of the security personnel sued, the relation back provisions require that:

> within [120 days after filing of the original complaint], the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(3).

In this case, the original complaint was filed on May 14, 1993 (Item 1), and the third-party complaint against Chase was filed on July 20, 1993 (Item 3). Chase acknowledged service of the third-party complaint on August 4, 1993. There is no dispute that the claims asserted against Chase in the proposed amended complaint arise out of the same operational facts as set forth in plaintiffs' original complaint. Indeed, the clear purpose of the proposed amendment is to correct an error—*i.e.,* to name Chase rather than BBI/SSI as the employer of the security personnel involved in the incident.

Accordingly, under Rule 15(c)(3), the claims asserted against Chase in the proposed amended complaint relate back to the date of the original complaint, and are therefore timely.

Chase also argues that the amendment should not be allowed because Chase is a private security firm and as such is not a proper defendant under § 1983. However, a private employer may be held liable under § 1983 for the constitutional torts of its employees where the plaintiff proves that the employee acted pursuant to the employer's official policy of some nature, *Rojas v. Alexander's Dept. Store, Inc.,* 924 F.2d 406, 408–09 (2d Cir.1990), or where the employer "was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private [entity]'s conduct is in some other way chargeable to the state." *Lee v. Town of Estes Park, Colo.,* 820 F.2d 1112, 1114 (10th Cir.1987) (citing *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980)). Furthermore, § 1983 liability against a corporate defendant may be found where the employer "authorized, supervised, caused or participated" in the alleged constitutional deprivation. *Kaiser v. Lief,* 874 F.2d 732, 736 (10th Cir.1989); *Taliaferro v. Voth,* 774 F.Supp. 1326, 1330 (D.Kan.1991); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In this case, plaintiffs have alleged not only that Chase was LoCiccero's employer, but also that Chase "acted jointly and in conspiracy with" LoCiccero and the other security personnel involved in the incident "in perpetrating the illegal activities ..." (Proposed Amended Complaint, ¶ 25). More-

over, the contract for security services between BBI/SSI and Chase requires Chase to provide off-duty municipal police officers as security guards (Item 34, Ex. C, ¶ 1). According, the proposed amendment alleges sufficient facts to state a claim against Chase.

Finally, since BBI/SSI has not established that it is entitled to summary judgment, Chase will remain in the case as a third party defendant in any event.

Therefore, leave is granted to allow plaintiffs to amend their complaint to allege a § 1983 claim directly against Chase.

## CONCLUSION

For the reasons set forth above, the City of Buffalo's motion for summary judgment (Item 17) is denied. BBI/SSI's motion for summary judgment (Item 34) is denied. Plaintiffs' motion to amend the complaint (Item 31) is granted. Plaintiffs shall file and serve the amended complaint forthwith, and Chase shall plead in response in accordance with Fed.R.Civ.P. 15(a).

**SO ORDERED.**